1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | NORTH COUNTY TRANSIT DISTRICT, a          CASE NO. 06cv0213 DMS (BLM)
   | public agency transportation district,

12 |                                          **ORDER (1) GRANTING-IN-PART**
   |                          Plaintiff,       **AND DENYING-IN-PART**
13 |            vs.                            **DEFENDANTS' MOTIONS TO**
   |                                          **DISMISS AND (2) GRANTING**
14 |                                          **MOTION TO STRIKE**

15 | ATLANTIC RICHFIELD COMPANY, a             [Doc. No. 52]
   | Delaware corporation; BP AMERICAN,
16 | INC., a Delaware corporation; FRENCH
   | AMERICAN INVESTORS, INC., dba 7
17 | DAY TIRE AND BRAKE, a California
   | corporation; SAMUEL E. WILLIAMSON,
18 | individually; MARCIA D. WILLIAMSON,
   | individually; TEXACO, INC., a Delaware
19 | corporation; FIRST SAN DIEGO
   | PROPERTIES XI, a California limited
20 | liability company or limited partnership;
   | FRANK B. RAMOS, individually; 2719
21 | LTD., a California limited partnership; and
   | DOES 7-50, inclusive,
22 |
   |                          Defendants.
23

24

25        This matter comes before the Court on Defendants' motions to dismiss and motion to strike,

26 pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), respectively.  All defendants filed

27 motions to dismiss.  Defendant Texaco, Inc. ("Texaco"), joined by Defendants Atlantic Richfield

28 Company ("ARCO"), BP American, Inc. ("BP"), also filed a motion to strike.  Plaintiff has filed its

1 | oppositions, and Defendants have filed their replies.  The motions were heard on September 22, 2006,

2 | at which time all parties were represented by counsel.  For the reasons discussed below, the Court

3 | grants-in-part and denies-in-part Defendants' motions to dismiss, and grants Defendants' motion to

4 | strike.

5 | **I.**

6 | **BACKGROUND**

7 | The following facts derive from the Second Amended Complaint ("SAC").  Plaintiff, North

8 | Country Transit District ("NCTD"), is a public agency transportation district.  (SAC, ¶ 30.)

9 | Defendants, ARCO, BP, French American Investors, Inc. dba 7 Day Tire And Brake ("French

10 | American"), Samuel E. Williamson and Marcia D. Williamson (the "Williams"), Texaco, First San

11 | Diego Properties XI ("FSDP"), and Frank B. Ramos ("Ramos"), are current and previous owners and

12 | occupants of the allegedly contaminated land at issue.  (SAC, ¶¶ 16-29.)

13 | Plaintiff is in charge of a construction project to build a passenger rail system connecting

14 | Oceanside to Escondido, California, known as the "Sprinter" project.  (SAC, ¶¶ 30-32.) Plaintiff owns

15 | the property on which it plans to build the passenger train station  ("Property").  (SAC, ¶ 1.) The

16 | Property is located in Escondido, on the west side of Crouch Street, south of Oceanside Boulevard,

17 | and adjacent to Loma Alta Creek.  *Id.*  In addition to building the train station, Plaintiff plans to widen

18 | the existing Crouch Street Bridge over Loma Alta Creek, and re-line Loma Alta Creek by removing

19 | the existing concrete creek bottom lining and constructing a box culvert with transition structures and

20 | energy dissipaters underneath the Sprinter's rail's tracks.  (SAC, ¶ 32.)

21 | Defendants are current and prior owners and occupants of two parcels of land in the vicinity

22 | of the Property.  (SAC, ¶¶ 16-29.)  ARCO and its parent company BP own and operate a gas station

23 | and a convenience store on the northwest corner of Oceanside Boulevard and Crouch Street, at 1900

24 | Oceanside Boulevard.  (SAC, ¶ 16.)  The remaining Defendants – the Williamsons, Texaco, FSDP,

25 | French American, 2719 Ltd. and Ramos – are either current or previous owners and occupants of the

26 | second parcel of land, located on the southeast corner of Oceanside Boulevard and Crouch Street, at

27 | 2001 Oceanside Boulevard.  (SAC, ¶¶ 23-29.)  During the relevant time period, the second parcel of

28 | land was first occupied by the Williamsons and Texaco.  (SAC, ¶ 24.)  Although it is unclear from the

SAC the extent and length of each defendant's ownership interest, the land was owned and occupied by FSDP and Ramos by June 1988. (SAC, ¶ 25.) After purchasing the gas station from Texaco and the Williamsons, Ramos turned the gas station into 7 Day Tire & Brake, a gas station and automobile service station. (SAC, ¶ 7.) At some later point, French American purchased 7 Day Tire & Brake from Ramos and has been operating the premises ever since through a leasehold from 2917 LTD. (SAC, ¶¶ 8-9.)

The SAC further alleges the ground beneath Defendants' premises is contaminated with hazardous substances, petroleum products and other toxic chemicals. (SAC, ¶ 34.) Plaintiff alleges that each defendant allowed "hazardous substances, including, but not limited to, petroleum based products, chlorinated solvents, pesticides, and other chemicals, to enter into the groundwater supply and soils at and surrounding their respective property." (SAC, ¶ 15.) Specifically, Defendants allegedly allowed multiple spills of petroleum based products and other hazardous substances to occur on their premises, thus creating a hydrocarbon plume filled with other hazardous substances underneath their property. (SAC, ¶¶ 16, 29.) The SAC alleges that the hazardous substances released by Defendants have moved offsite and down-gradient onto Plaintiff's Property. (SAC, ¶¶ 22, 29.)

Plaintiff alleges it will encounter, during the construction of project Sprinter, hazardous substances and petroleum impacted soil and groundwater created by Defendants' plumes. (SAC, ¶ 34.) According to Plaintiff, "remediation must occur prior to or concurrently with the Project to protect human health and the environment. Substantial remediation costs associated with the dewatering discharge and/or suitable removal and disposal of contaminated soils and water will occur during" the project. *Id.* Plaintiff claims it "has been forced to undertake a clean up of its Property including, but not limited to soil and groundwater," and "has expended substantial sums in retaining the contractors who have performed the required remediation." *Id.*

The SAC asserts eleven claims for relief, each against all defendants. Defendants ARCO and BP, joined by all other defendants, move to dismiss: (1) the second claim for relief for violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*; (2) the fifth claim for relief for unjust enrichment; and (3) the sixth claim for relief for equitable indemnity and contribution. ARCO and BP, joined by Texaco, French American

1    and Ramos, also seek dismissal of Plaintiff's third claim for relief for violation of the California

2    Hazardous Substances Account Act (HSAA), California Health and Safety Code § 25300 *et seq.*[1]

3    Texaco, joined by ARCO and BP, moves to dismiss the fourth claim for relief for reimbursement for

4    costs of abatement under California Water Code § 13304, and the seventh claim for relief for

5    negligence.  ARCO and BP also join Texaco's motion to strike Plaintiff's requests for attorney's fees

6    for eight of Plaintiff's eleven claims for relief.

**II.**

**MOTION TO DISMISS**

**A.    LEGAL STANDARD**

        A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729,

732 (9th Cir. 2001).  A claim may be dismissed only if "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957).  *See also Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  In

deciding a 12(b)(6) motion, all material factual allegations of the complaint are accepted as true, as

well as all reasonable inferences to be drawn from them.  *Cahill*, 80 F.3d at 338.  Dismissal is proper

only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

cognizable legal theory.  *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d

696, 699 (9th Cir. 1988)).

        The court, however, need not accept all conclusory allegations as true; rather, it must "examine

whether conclusory allegations follow from the description of facts as alleged by the plaintiff."

*Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).  *See also Benson v.*

*Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 275-76 (9th Cir. 1982) (court need not accept

conclusory legal assertions); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory

allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil

Rights Act."); *accord Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984) ("All well-pleaded facts,

as distinguished from conclusory allegations, must be taken as true.").  "The plaintiff must allege with

---

[1] Defendants FSDP, 2719 Ltd. and the Williams do not join ARCO/BP's request to dismiss the third claim for relief, reasoning that claim is more appropriately addressed in a summary judgment motion.  (FSDP Joinder, at 3.)

1  at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's

2  claim." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

3  **B.     DISCUSSION**

4  **1.     Second Claim for Relief: CERCLA**

5        Defendants argue that Plaintiff has failed to allege sufficient facts to establish under CERCLA

6  either a third-party defense or an offshoot of that defense – the "innocent landowner" defense.

7  Plaintiff argues it has sufficiently alleged an "innocent landowner" defense.

8        Under CERCLA's liability scheme, current landowners are presumed to be potentially

9  responsible parties ("PRPs") and thus, may bring a claim for cost recovery under § 107(a) only if they

10 establish one of three affirmative defenses: that the contamination was caused by (1) an act of war,

11 (2) an act of god, or (3) by a third party.  42 U.S.C. § 9607(b)(1)-(3); *see also Lincoln Properties, Ltd.*

12 *v. Higgins*, 823 F. Supp. 1528, 1533 (E.D. Cal. 1992).  The third affirmative defense, that of a "third

13 party" causing contamination, is at issue here.  To state such a defense, a plaintiff must show that: (1)

14 the third party acted *outside* a direct or indirect contractual relationship with plaintiff; (2) plaintiff

15 exercised due care with regard to the hazardous substances; and (3) plaintiff took precautions against

16 foreseeable acts or omissions of any such third party and their consequences.  *See* 42 U.S.C. §

17 9607(b)(3); *see also Lincoln Properties*, 823 F. Supp. at 1539.  The defense is unavailable "if the third

18 party had a direct or indirect contractual relationship with the owner, and the contamination occurred

19 in the course of that relationship." *Bedford Affiliates v. Sills*, 156 F.3d 416, 425 (2nd Cir. 1998)

20       Congress supplemented the third party defense in 1986, when it passed the Superfund

21 Amendments and Reauthorization Act ("SARA").  SARA expanded the third-party defense to include

22 purchasers who acquire property under the following circumstances:

23     [t]he real property . . . was acquired by the defendant *after* the disposal . . . of the
       hazardous substance . . ., *and one or more* of the circumstances described in clause (i),
24     (ii), or (iii) is also established . . .:

25          (i) At the time the defendant acquired the facility the defendant did not know
       and had no reason to know that any hazardous substance . . . was disposed of on, in,
26     or at the facility;

27          (ii) *The defendant is a government entity which acquired the facility* by escheat,
       or through any other involuntary transfer or acquisition, or *through the exercise of*
28     *eminent domain authority by purchase or condemnation*;

- 5 -

1                (iii) The defendant acquired the facility by inheritance or bequest.

2   42 U.S.C. § 9601(35)(A)(emphasis added).  The "innocent landowner" defense emerges from this

3  definition.  That is, a PRP landowner may escape liability when it acquires property "after" hazardous

4  substances have already been disposed on the property, "and one or more" of the enumerated

5  circumstances above exists (*e.g.,* the PRP is a governmental entity that acquired the property through

6  eminent domain).  *See, e.g., Bedford Affiliates*, 156 F.3d at 425.  Before SARA, a PRP landowner who

7  purchased the site from a liable third party could not invoke the third-party defense because of the

8  "contractual relationship" limitation.  *See* 42 U.S.C. § 9607(b)(3).  Thus, two potential affirmative

9  defenses may be available to Plaintiff: the third party defense, and the innocent landowner defense.

10        Plaintiff contends it is an innocent landowner under §101(35)(A)(ii) because it acquired the

11  Property through eminent domain after the disposal of hazardous substances.  Plaintiff argues "the

12  Complaint makes clear that NCTD did not acquire property through the ordinary commercial manner."

13  (Opposition at 3.)  Plaintiff requests that the Court take judicial notice of the Purchase Agreement

14  between it and the seller of the Property, which indicates that Plaintiff and the seller "entered into

15  negotiations for sale of the Property to [Plaintiff] under [Plaintiff's] threat to condemn the Property."

16  (*Id.* at 4.)

17        The Court, however, may not take judicial notice of facts recited in a contract.  *See* Fed. R.

18  Evid. 201; *Carroll v. Commonwealth Edison, Co.*, 1997 WL 428528, *3 (N.D. Ill. 1997) (court cannot

19  take judicial notice of terms of contract).  While the Court may take judicial notice of the existence

20  of a contract, it may not take notice of the contents or terms of the contract.  The Court, therefore,

21  declines to take judicial notice of the terms of the subject Purchase Agreement.  Because the SAC is

22  silent regarding the manner and circumstances in which Plaintiff acquired the Property, Plaintiff has

23  not sufficiently stated facts to establish an innocent landowner defense under § 101(35)(A)(ii).

24        In addition, the SAC fails to allege sufficient facts to establish a "third party" defense.  While

25  Plaintiff alleges that it "did not cause or contribute to the contamination at its property or at"

26  Defendants' premises, (SAC ¶ 65); that Defendants are responsible for the contamination, (*id.*); that

27  scientific testing and studies "confirm[] that the Property is polluted with petroleum based products,

28  chlorinated solvents, pesticides, and other chemicals,"(SAC, ¶ 34); that Plaintiff "will encounter

hazardous substances and petroleum impacted soil and groundwater," (*id.*); and that "remediation must occur prior to or concurrently with the Project to protect human health and the environment," (*id.*); these allegations, taken together, are not sufficient to establish a third party defense. It is unclear, for example, whether or not Plaintiff had a contractual relationship with any defendant. It is also unclear whether or not scientific testing and studies were done by Plaintiff after it purchased the Property or by the previous owner.

The second claim for relief is therefore dismissed with leave to amend. Plaintiff may attempt to allege facts giving rise to either an innocent landowner defense or a third party defense, or both.

**2.    Third Claim for Relief: HSAA, California Health and Safety Code § 25300 *et seq.***

Defendants contend under both CERCLA and California's HSAA, Plaintiff cannot recover costs incurred for addressing petroleum product contamination. Defendants cite several cases for the proposition that courts have dismissed CERCLA and/or HSAA claims where a complaint demonstrates on its face that the hazardous substance is a petroleum product. (ARCO/BP Mot. P & A at 10.) Defendants argue the SAC "makes only bare, boilerplate allegations of non-petroleum contamination," and "fails to allege any actual facts in support of its allegations as to other hazardous substances." (*Id.* at 10-11.) In response, Plaintiff acknowledges that petroleum is excluded from coverage under both CERCLA and HSAA, but points out that the SAC alleges the Property was contaminated by numerous substances in addition to petroleum, including chlorinated solvents, pesticides and other chemicals. (Opposition at 8-9.)

The SAC specifically alleges the Property is contaminated by petroleum-based products, in addition to "chlorinated solvents, pesticides and other chemicals." (SAC, ¶ 34.) The Court must accept as true Plaintiff's allegation that the Property is contaminated with these non-petroleum based chemicals. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) (on a 12(b)(6) motion the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them).

Defendants argue that case law prohibits Plaintiff from avoiding "the petroleum exclusion by dropping a few extra non-committal words into an allegation." (ARCO/BP Reply at 6.) Defendants contend that the SAC includes "long descriptions of alleged petroleum contamination followed by

vague, conclusionary and boilerplate riders like 'and other contamination.'" In support, Defendants cite *Wilshire Westwood,* 881 F.2d at 801, and *Bunger v. Hartman*, 797 F. Supp. 968 (S.D. Fla. 1992). These cases, however, are factually distinguishable.  In both, the plaintiffs merely asserted that the contamination was caused by "hazardous substances including, but not limited to," petroleum (*Wilshire*, 881F.2d at 802), and "other products" (*Bunger*, 797 F. Supp. at 969).  Here, in contrast, Plaintiff specifically alleges that the other contaminants include chlorinated solvents and pesticides. Such allegation are sufficient at this stage of the proceedings.

### 3. Fourth Claim for Relief: Reimbursement for Costs of Abatement, California Water Code § 13304

Defendant Texaco contends Plaintiff lacks standing to sue under the California Water Code because  "neither the language of the statute nor any legislative history supports a private right of action."  (Texaco Mot. P & A at 3.)  Rather, section 13304 allows only the California State Water Resources Control Board or a Regional Water Quality Control Board ("Regional Board") to issue a cleanup order.  *Id.*  In response, Plaintiff argues that section 13304(c)(1) provides that "any governmental agency may recover its response costs for cleaning up waste."  (Opposition at 14-15.)

No California court has addressed whether section 13304 confers a private right of action.  In the absence of California Supreme Court authority, a federal court must predict how a state's highest court would decide the issue.  *See Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996).  The starting point of this inquiry begins with the statute's plain language.  *See Slaven v. BP America, Inc.*, 973 F.2d 1468, 1471 (9th Cir. 1992).  Where the words of the statute are unambiguous, the inquiry is complete.  *Connecticut National Bank v. Germain*, 503 U.S. 249, 254 (1992).  The language of the statute may also be examined in light of the "overall structure and purpose of the legislation."  *Slaven*, 973 F.2d at 1473.

A careful review of the statutory scheme in question suggests no private right of action exists under section 13304.  Chapter 1 of the Porter-Cologne Water Quality Control Act (Wat. Code, § 13000 *et seq*.) (the "Act"), which sets out the Legislature's objectives in enacting the statute, provides:

> It is the intent of the Legislature that *a state board and each regional board shall be the principal state agencies with primary responsibility for the coordination and control of water quality*.  The state board and regional boards in exercising any power granted in this division [Division 7 of the Porter-Cologne Act] shall conform to and

1   implement the policies of this chapter and shall, at all times, coordinate their respective
2   activities so as to achieve a unified and effective water quality control program in this
    state.

3   California Water Code § 13001 (emphasis added).

4       Section 13304 is found in Chapter 5, Article 1 of the Act, which is titled "Administrative

5   Enforcement and Remedies *by Regional Boards*."  (Emphasis added.)  Section 13304(a) provides:

6   "any person . . . which has caused . . . any waste to be discharged . . . into the waters of the state" must

7   clean up the waste or abate the effects of the waste.  Cal. Water Code § 13304(a).  Additionally,

8   section 13304(b)(1) provides that "[t]he regional board may expend available money to perform any

9   cleanup," and that  "[t]he *regional board may perform the work itself, or with the cooperation of any*

10  *other governmental agency*."  Cal. Water Code § 13304(b)(1)-(2) (emphasis added).  Section

11  13304(c)(1), the subsection cited by Plaintiff to support its argument, provides:

12      [I]f the waste is cleaned up or the effects of the waste are abated, or, in the case of
        threatened pollution or nuisance, other necessary remedial action is taken by any
13      governmental agency, the person or persons who discharged the waste . . . are liable
        to that governmental agency to the extent of the reasonable costs actually incurred in
14      cleaning up the waste . . . .  The amount of the costs is recoverable in a civil action by,
        and paid to, the governmental agency *and* the state board to the extent of the latter's
15      contribution to the cleanup costs.

16  Cal. Water Code § 13304(c)(1) (emphasis added).  Accordingly, the statutory scheme when read in

17  context, provides: (1) the Regional Board may order a party to clean up waste discharged by that party

18  (§ 13304(a)); (2) the Regional Board may perform the cleanup itself and then seek reimbursement

19  from the liable party (§ 13304(b)(1) &(4) or (3) the Regional Board may perform the work in

20  cooperation with another governmental agency (§ 13304(b)(2)), in which case the costs are

21  recoverable in a civil action brought by the governmental agency and state board.  Cal. Water Code

22  § 13304(c)(1).  The language and structure of the statute make clear that the Regional Board alone,

23  or in cooperation with another governmental agency, may enforce § 13304.  Nowhere does the statute

24  authorize  a governmental agency, other than the state and regional water boards, to act alone.

25      Plaintiff's reading of the statute ignores both subsections (a) and (b) of § 13304, and focuses

26  only on subsection (c)(1).  Such selective reading of the statute is inappropriate.  *See Slaven*, 973 F.2d

27  at 1473 (the language of the statute must be examined in light of the "overall structure and purpose

28  of the legislation.")  Moreover, subsection (c)(1), even when read in isolation, does not support

Plaintiff's argument. While subsection (c)(1) appears to create a *right* in favor of governmental agencies to recover cleanup costs in conjunction with authorized state agencies (*i.e.*, state and regional water boards), it does not create a private *remedy* authorizing such governmental agencies to act alone. *See Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62-63 (1999) (when the "legislature intends to create a private right of action, it will do so 'directly and in clear, understandable, unmistakable terms.'"). A plaintiff may not sue under a statute unless the statute "displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Thus, while the statute in question appears to create a right of recovery in favor of governmental agencies, whether the legislature intended additionally that the statute could be enforced *solely* through private litigation without involvement of a designated water board is a different question.[2] *See Transamerica Mortgage Advisors, Inc. V. Lewis*, 444 U.S. 11, 18 (1979)("whether Congress intended additionally that provisions would be enforced through private litigation is a different question.") Without both a private right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87.

*So. California Water Co. v. Aerojet-General Corp.*, 2003 U.S. Dist. LEXIS 26534 (C.D. Cal. 2003), on which Plaintiff relies, does not assist Plaintiff. That case does not hold that § 13304 provides a private right of action. There, the plaintiff brought suit for violation of California Business and Professions Code section 17200 predicated on alleged violations of, among other provisions, California Water Code §§ 13304 and 13350. *Id.* at *38. The defendant argued the court should dismiss the claim because there is no private right of action under §§ 13304 and 13350. *Id.* at * 37. The court disagreed, reasoning "whether a private right of action should be implied under [the predicate] statute . . . is immaterial since any unlawful business practice may be redressed by a private action charging unfair competition in violation of" section 17200. *Id.* at *41 (citing *Stop Youth*

---

[2] The term "*private* right of action" has been used by the parties in their briefing and is commonly used in case law. To the extent Plaintiff is a *public* agency transportation district (SAC, ¶ 30), the terminology is somewhat awkward. Nevertheless, the issue behind the term as discussed in the case law referenced above, applies to the present case. That is, does the statute either expressly or implicitly grant a right of action to the party seeking legal redress under that statute? The legal analysis remains the same regardless whether the party is a private individual or entity or a public one.

1   *Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 562 (1998)). *So. California Water Co.*, therefore,

2   does not assist Plaintiff because it does not hold that § 13304 provides a private right of action.

3           **4.**        **Fifth Claim for Relief: Unjust Enrichment**

4           Defendants contend Plaintiff's claim for unjust enrichment fails because Plaintiff either

5   voluntarily cleaned up the contamination or did so pursuant to government order.  (ARCO/BP Mot.

6   P & A at 11-12.)  Therefore, it cannot be said that Plaintiff unjustly enriched Defendants by satisfying

7   its own legal duty.  The Court agrees.

8           To state a claim for unjust enrichment under California law, the benefits must be conferred "by

9   *mistake, fraud, coercion, or request*; otherwise, though there is enrichment, it is not unjust."  Witkin,

10  Contracts, §1020 at 1109 (emphasis in original).  "[W]here the plaintiff acts in performance of his or

11  her own duty or in protection or improvement of the plaintiff's own property, any incidental benefit

12  conferred on the defendant is not unjust."  *Id.*

13          Here, assuming *arguendo* that Plaintiff's cleanup of the contamination benefitted Defendants,

14  it is clear that the benefit was not conferred by "mistake, fraud, coercion, or request," on the part of

15  Defendants.   The SAC alleges that Plaintiff cleaned up its Property "in connection with the

16  construction of the Sprinter . . . ."  (SAC, ¶ 35.)  Plaintiff also alleges that "remediation must occur

17  prior to or concurrently with the Project to protect human health and the environment."  (SAC, ¶ 34.)

18  Therefore, it is clear that Plaintiff's remediation activities occurred voluntarily, and not by mistake,

19  fraud, coercion, or at Defendants' request.

20          Plaintiff contends restitution is an appropriate remedy here, because "defendants are not simply

21  innocent parties who will incidentally benefit" from Plaintiff's conduct.  Rather, "[Defendants] are

22  the very parties responsible for causing the contamination" that Plaintiff had to clean up.  Plaintiff's

23  focus on Defendants' potential liability is unavailing.  California law requires Plaintiff to allege that

24  Defendants unjustly benefitted from Plaintiff's conduct, as a result of "mistake, fraud, coercion or

25  request."  Without such an allegation, even if Defendants are found liable for the contamination,

26  Plaintiff may recover from Defendants through other legal theories, but not through an equitable claim

27  of unjust enrichment.  The three cases cited by Plaintiff, *55 Motor Co. v. Liberty Indus. Finishing*

28  *Corp.*, 885 F. Supp. 410, 424 (E.D. N.Y. 1994), *State of New York v. Schenectady Chemicals, Inc.*,

103 A.D. 2d 33, 38-39 (Sup. Ct. App. Div. 1984), and *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 204-05 (1967), are unhelpful because they do not apply California law.   Therefore, Plaintiff's fifth claim for unjust enrichment is dismissed with prejudice.

### 5.   Sixth Claim for Relief: Equitable Indemnity and Contribution

"Indemnity generally arises where one party must make good a loss or damage incurred by another."   *Selma Pressure Treating Co. Inc., v. Osmose Wood Preserving Company of America, Inc.*, 221 Cal.App.3d 1601, 1611 (1990).   The elements of a cause of action for indemnity are: (1) a showing of fault on the part of the indemnitor, and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible.   *Expressions at Rancho Niguel Ass. v. Ahamnson Developments, Inc.*, 86 Cal.App.4th 1135, 1139 (2001).

Defendants argue the second element – "resulting damages" – is absent.   A prerequisite for equitable indemnity is "an actual monetary loss through payment of a judgment or settlement."   (Mot. P & A at 13) (citing *Christian v. County of Los Angeles*, 176 Cal.App.3d 466, 471 (1986).   Defendants point out that Plaintiff has not alleged it is a party to "any adverse judgment or settlement, or even an adverse lawsuit."   (Mot. P & A at 14.)   In essence, Defendants argue that the costs incurred by Plaintiff are not the type of damages cognizable in an equitable indemnity claim, because Plaintiff has not incurred any financial obligations to third parties as a result of a settlement or judgment.

While the California Supreme Court has declared that a claim for indemnity does not accrue until the indemnitee suffers loss through payment of an adverse judgment or settlement (*Valley Circle Estates v. VTN Consolidated, Inc.*, 33 Cal.3d 604, 611 (1983)), it has not directly examined the question at issue: whether the resulting damages must arise from a financial obligation to a third party as a result of a judgment or settlement, or whether any damage is adequate as long as the indemnitee suffers a loss?

*City of San Diego v. United States Gypsum Co.*, 30 Cal.App.4th 575 (1994), is instructive. There, the plaintiff City of San Diego claimed "it was entitled to equitable indemnification from defendants in abating asbestos in city buildings."   *Id.* at 587.   The City had not been sued by anyone for the presence of asbestos in city buildings.   *Id.*   The trial court granted the defendants summary judgment on the City's equitable indemnity claim, and the Court of Appeal affirmed.   *Id.*   The

appellate court reasoned, among other things, that the "City has not incurred damages for payments to any third party in settlement of a claim or in satisfaction of a judgment." *Id.* Similarly, the SAC here indicates Plaintiff voluntarily cleaned up the contamination on its Property. Nowhere in the SAC does Plaintiff allege it incurred damages through payment to a third party. Like the court in *Gypsum*, this Court concludes Plaintiff has not sufficiently pled a valid claim for indemnity.

Plaintiff cites *Mangini v. Aerojet-General Corp.*, 230 Cal.App.3d 1125 (1991), and *Selma Pressure Treating, supra*, 221 Cal. App. 3d 1602, for the proposition that an equitable indemnity claim is properly stated where the plaintiff has been ordered to clean up the contamination. Plaintiff then argues it "has been forced to undertake a clean up of its property" as part of the project requirements for constructing the Sprinter. (Opposition at 12.) *Mangini* and *Selma Pressure Treating*, however, do not support Plaintiff's argument. In both, the plaintiffs were subject to an order to clean up the contamination on their property. Here, as is in *Gypsum*, Plaintiff "was under no such requirement" and has "suffered no financial losses to third parties." 30 Cal.App.4th at 589. Notably, Plaintiff's opposition does not claim that it was subject to such an order. The SAC alleges that Plaintiff undertook the remediation on its own, and not as a result of an order. Therefore, Plaintiff has failed to state a claim for equitable indemnity. The SAC is dismissed with prejudice.

### 6.    Seventh Claim for Relief: Negligence

Defendant Texaco argues Plaintiff's negligence claim is barred by the three-year statute of limitations because Texaco's ownership of the contaminated property, as alleged in the SAC, ended at the latest in June 1988. (Texaco Mot. P & A at 5.) Texaco also contends Plaintiff may not rely on the discovery rule – which states that a tort of action may not accrue until a plaintiff discovers or should have discovered the facts essential to its claim for relief – because it has not alleged sufficient facts. (*Id.* at 6.) In response, Plaintiff asserts that whether the equitable tolling doctrine applies is a fact-intensive inquiry inappropriate for a rule 12(b)(6) motion. Plaintiff asserts that the SAC satisfies the federal notice pleading standard even though it does not disclose when Plaintiff became aware of the contamination.

California law provides that to invoke the benefit of the discovery rule, a plaintiff "must plead facts to show his or her inability to have discovered the necessary information earlier despite

1  reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 815 (2005). Although the

2  heightened pleading standard of the discovery rule seems to conflict with the liberal federal notice

3  pleading standard, the Ninth Circuit has unequivocally held that in order to rely on a defense to a

4  statute of limitations challenge provided by state law, a plaintiff must meet the pleading requirements

5  of that state law. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995).

6        Plaintiff cannot save its claim for relief by invoking the liberal notice pleading standard.

7  Instead, Plaintiff must allege adequate facts showing its "inability to have discovered the necessary

8  information earlier despite reasonable diligence." *Id.* Plaintiff's claim for negligence against Texaco

9  is therefore dismissed without prejudice.

10  **III.**

11  **MOTION TO STRIKE**

12        Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

13  pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f)

14  motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious

15  issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697

16  F.2d 880, 885 (9th Cir. 1983). "'Immaterial' matter is that which has no essential or important

17  relationship to the claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R.

18  Miller, *Federal Practice and Procedure* § 1382, at 706-7 (1990). "'Impertinent' matter consists of

19  statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711.

20        Texaco, joined by ARCO and BP, moves to dismiss Plaintiff's requests for attorney's fees for

21  the second claim for relief (a violation of CERCLA) and all state law claims (third through ninth).

22  Plaintiff opposes the motion only insofar as it seeks to strike Plaintiff's request for fees under the

23  second claim for relief. In essence, Plaintiff concedes that its requests for fees under the state law

24  claims are improper. Therefore, Texaco's motion to strike Plaintiff's fee requests is granted as to the

25  state law claims.

26        With regard to the CERCLA claim, Plaintiff points out that although attorney's fees are not

27  ordinarily recoverable, certain specified costs – that might include such fees – are recoverable.

28  (Opposition to Mot. Strike at 1.) In support, Plaintiff cites *Key Tronic Corp. v. United States*, 511 U.S.

- 14 -

809, 819-20 (1994), which holds that while litigation-related fees are not recoverable, legal fees incurred from "work that is closely tied to the actual cleanup may constitute a necessary cost of response" under section 107(a)(4)(B) and may be recoverable. In its reply, Texaco requests that the Court strike Plaintiff's fee request to the extent it seeks litigation-related attorney's fees. Because Plaintiff acknowledges that CERCLA does not provide for such fees, this Court grants Defendants' motion to strike Plaintiff's request for litigation-related fees under CERCLA. Plaintiff, however, may recover fees under this claim consistent with *Key Tronic Corp.*, 511 U.S. 809.

## IV.

## CONCLUSION

Accordingly, Defendants' motions to dismiss are GRANTED-IN-PART and DENIED-IN-PART. Defendants' motions are DENIED as to Plaintiff's third claim for relief under the California Hazardous Substances Account Act. Defendants' motions are GRANTED with leave to amend as to Plaintiff's second claim for relief under CERCLA and seventh claim for relief for negligence; and GRANTED without leave to amend as to Plaintiff's fourth claim for relief for Reimbursement for Costs of Abatement (California Water Code § 13304); fifth claim for relief for unjust enrichment; and sixth claim for relief for equitable indemnity and contribution. Defendants' motion to strike is GRANTED.

Plaintiff shall file its Third Amended Complaint within 20 days of this Order being stamped "filed." The Magistrate Judge shall set all dates, including a trial date, either at the next scheduled hearing or at such earlier time as she deems appropriate.[3]

DATED: September 27, 2006

HON. DANA M. SABRAW
United States District Judge

cc: Judge Major
    All parties

---

[3] This Court indicated at oral argument that it would defer setting trial dates until all PRPs have been served and have entered their appearance. After further consideration, the Court concludes the interests of justice are better served by setting trial dates sooner rather than later. It is uncertain whether additional PRPs will be added. If additional PRPs are added by Plaintiff or Defendants, such PRPs may move to amend the scheduling order for good cause shown.

- 15 -